Alex V. Chachkes
SETTY CHACHKES PLLC
228 Park Avenue South, Suite 54517
New York, NY 10003
917-428-1358
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Beyer LLC d/b/a Beyer Projects,<br><br>                    Plaintiff,<br><br>          v.<br><br>Annamarie Baldessari, individually and as trustee of the John Baldessari Trust-1991 (as restated and amended); and Antonio Baldessari, individually and as trustee of the John Baldessari Trust-1991 (as restated and amended),<br><br>                    Defendants. | Civil Action No. 23-3819<br><br>Jury Trial Requested |

## COMPLAINT

Beyer LLC d/b/a Beyer Projects ("Beyer Projects") brings this action against Annamarie Baldessari, individually and as trustee of the John Baldessari Trust-1991 and Antonio Baldessari, individually and as trustee, of the John Baldessari Trust-1991 (collectively, the "Trust"), and alleges as follows:

## INTRODUCTION

1.      For the past 25 years, Beyer Projects has been working with some of the world's top artists to help them expand into the media of sculpture. Beyer Projects partners with artists from early in their projects—whether realizing a sketch on the metaphorical back of a napkin or

1

replicating fully realized maquettes. Beyer Projects personally invests in its collaborations through project funding, extensive research and development, comprehensive production supervision, and placement of works in museums or private collections. Past collaborators have included artists such as Jenny Holzer, Robert Rauschenberg, Claes Oldenburg, Louise Bourgeois and dozens of others.

2.      One such collaboration was with renowned artist John Baldessari ("John"), whose career spanned over four decades until his death in January of 2020. His artwork has been featured in over 200 solo shows and 1,000 group shows in his six-decade career, and included in the permanent collection of museums such as the Museum of Modern Art, the Guggenheim Museum, the Art Institute of Chicago, and the Los Angeles County Museum of Art.

3.      Before working with Beyer Projects, John Baldessari had already established himself as one of America's leading conceptual artists. John Baldessari, however, did not have the background in, or the ability to create, large-scale sculptures. In 2005, John Baldessari and Steven Beyer—a principal of Beyer Projects with his wife, Melissa—agreed to work together to create sculptural artwork. This made sense. John had an appetite to extend his work to new media, and Steven Beyer has decades of experience and accomplishment in sculpture, extending back to when he was one of the youngest Guggenheim Fellows in that foundation's history.

4.      Thus, the parties entered into a series of agreements. The agreements generally had three material aspects, ultimately memorialized in the contracts attached as Exhibit 1. First, for a given work, Beyer Projects would create editioned sculptures in collaboration with John, fully bearing the significant costs associated with bringing each sculpture in the edition to life. Second, one sculpture would be wholly owned by John (the "**John-Owned**" sculpture) and one would be wholly owned by the Beyers (the "**Beyer-Owned**" sculpture). Third, the remaining

sculptures (the "**Co-Owned**" sculptures) would be co-owned, and the profits from their sale

would be split 50-50 after Beyer Projects recouped its costs.  For two agreements (*Brain/Cloud*

and *Brain Fountain*), Beyer Projects would create a single, Co-Owned sculpture—but, as with

the other artwork, profits from their sales would be split 50-50 after Beyer Projects recouped

costs.

     5.     Here is the typical, relevant contractual language (Ex. 1-A):

>      *· · · Camel (Albino) Contemplating Needle (Large)* will be produced in an edition of 3.
> Additionally, there will be three artist's proofs, one will be the property of John Baldessari, the second
> will belong to BEYER Projects, and the third will be for sale.
>
> BEYER Projects and Baldessari will split the profits from the sale of the edition of 3 sculptures and one
> proof 50/50 after production costs have been paid. · · ·

     6.     Under these contracts, Beyer Projects spent over $2,000,000 creating 11 different

works, comprising over 70 separate sculptures.

     7.     The contribution of Beyer Projects cannot be overstated. John typically would

initiate a project by orally suggesting to Steven Beyer a concept, sometimes accompanied by

stock photos—*e.g.*, suggesting a sculpture of a camel contemplating the eye of a needle along

with providing an Internet picture of a camel. Beyer Projects then would return with sketches,

and John would comment again orally. After some further iterations—with Beyer Projects

creating the physical manifestation of ideas that John and Steven discussed orally—eventually

Beyer Projects would turn this into a small-scale model. Ultimately, Beyer Projects would begin

production of the final large-scale sculpture. Along the way Beyer Projects would take care of all

the physical details, down to designing and coloring a glass eye to engineering the final

installation.

     8.     While John was alive the sale of the sculptures went smoothly. For example, all of

the copies of the sculpture *Beethoven's Trumpet (with Ear)* were sold with the money distributed

precisely as the parties agreed. That is, 50-50 after Beyer Projects recouped its production costs. Copies of other sculptures were also sold and, again, the money was distributed as the parties agreed.

9.      It was John Baldessari's deeply held wish that eventually the sculptures be shown by a gallery that could show all the work together (including both for-sale and already-sold sculptures). Only about four such galleries have the physical and financial capacity to exhibit his entire sculptural oeuvre at once. Beyer Projects executed a contract with one of them, the Gagosian Gallery, to sell all the Co-Owned, as well as the Beyer-Owned, artwork. The Gagosian Gallery is one of the top galleries in the world, known for its beautiful exhibition space and its power to amplify an artist's reputation.[1] The exhibition was scheduled to open in May of 2023. It was expected that this exhibition would bring in millions of dollars—potentially as much as $10,000,000 or more.

10.      Before John Baldessari died in 2020, at age 88, he created the John Baldessari Trust-1991, to be administered by, and take care of after his death, his two adult children, Annamarie and Antonio. Annamarie and Antonio were not involved in John's business, and, indeed, of them John stated in a 2003 "Mission Statement-Estate of John Baldessari" that "they may never be able to support themselves." Thus, under the John Baldessari Trust-1991, John provided gifts of $25,000,000 each, as well as artwork and other assets of enormous value.

11.      That, regrettably, was not enough for Annamarie and Antonio. Acting as trustees for the Trust, they decided to try to take everything from Beyer Projects. They demanded all the

---

[1] "It is hard to imagine an art world without Larry Gagosian in it. The mega dealer … has also come to symbolize — and set the tone — for a sexy gallery scene of museum-quality shows, glamorous exhibition openings and high prices." Robin Pogrebin, *Without Heirs, Larry Gagosian Finally Plans for Succession*, N.Y. TIMES, Nov. 16, 2022.

Co-Owned art as their exclusive property, with an exclusive right to all profits from their sale, despite contracts that provide expressly otherwise. They also refused to reimburse Beyer Projects for the production costs liquidated in the relevant contracts.

12.     The Gagosian Gallery became aware of the Trust's demands, and their counsel's strident letters demanding possession of all the Co-Owned property (and more). Because of this cloud on ownership, however baseless, the Gagosian Gallery cancelled their exhibition.

13.     The Trust's purported justification for its behavior was a fig-leaf covering a cynical attempt to steal the Beyer's ownership interest in the Co-Owned art. Specifically, the Trust claimed that the Co-Owned art was always 100% owned by John and was simply held by the Beyers "on consignment." Yet the relevant contracts do not mention consignment, nor do they provide for a consignment relationship. John Baldessari or Beyer Projects never once discussed consignment as they created art together, other than the latter occasionally acting as *consignor* to third parties. To the contrary, they expressly provide that the Co-Owned art is not exclusively owned by either party.

14.     Beyer Projects finds itself in the unfortunate position of having to sue the children of an artist they loved, someone with whom they intimately collaborated, and an artist whose legacy means everything to them. But the Trust has no interest in legacy or propriety. It has left Beyer Projects with no choice but to file this action.

## THE PARTIES

15.     Beyer Projects is a New York corporation with its principal place of business located at 307 West 21st Street, New York, NY 10011.

16.     Beyer Projects is a family-owned business. The husband-and-wife team of Steven and Melissa Beyer founded Beyer Projects in 1998 to work with artists to create sculptures.

17.     Steven Beyer is an internationally acclaimed sculptor, a former Associate Professor of art, a frequent lecturer and speaker on sculpture. Steven's accolades include a John Simon Guggenheim Foundation Fellowship, two NEA Artist Fellowships, a McKnight Foundation Artist Fellowship, a Bush Foundation Artist Fellowship, a Residence at Cité Internationale des Arts, and a PEW Fellowship in the Arts. Steven has also curated roughly 30 exhibitions in the past 35 years.

18.     Melissa Beyer is the Co-owner and Co-Director of Beyer Projects. Melissa Beyer has two master's degrees in art history. She left a Ph.D. program at Stanford University to dedicate her time to Beyer Projects. Melissa has worked in the art world for nearly 30 years, in academic settings, as a critic and writer, and in a curatorial capacity.

19.     Since 1998, Beyer Projects has been producing technically challenging works on rigorous deadlines has helped artists stretch their practices in new directions. Past collaborators have included:

| | | |
|---|---|---|
| Marina Abramovic | | |
| John Armleder | Jim Hodges | Thomas J Price |
| Misoslaw Balka | Jenny Holzer | Marc Quinn |
| Stephan Balkenhol | Rebecca Horn | Robert Rauschenberg |
| Louise Bourgeois | Anish Kapoor | Kay Rosen |
| Chris Burden | Sol Lewitt | Jennifer Rubell |
| Jean-Marc Bustamante | Glenn Ligon | Tom Sachs |
| Anthony Caro | Vik Muniz | Gary Simmons |
| Eduardo Chillida | Claes Oldenburg | Lorna Simson |
| Chuck Close | Julian Opie | Kiki Smith |
| Petra Cortright | Jorge Pardo | Tavares Strachan |
| Iran do Espírito Santo | Jaume Plensa | Richard Tuttle |
| Mona Hatoum | Jack Pierson | Rachel Whiteread |

20.     Defendant Annamarie Baldessari is a California resident and a trustee of the John Baldessari Trust-1991.

21.     Defendant Antonio Baldessari is a California resident and a trustee of the John Baldessari Trust-1991.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over this controversy under 28 U.S.C. § 1332(a) because the parties are citizens of different States and the matter in controversy exceeds $75,000.

23.     This Court has specific personal jurisdiction over defendants because this claim arises out of, or relates to, their, the Trust's, and John Baldessari's, interaction with, and the performance of their contractual obligations with, Beyer Projects in this District.

24.     This Court has general personal jurisdiction over defendants because, upon information and belief, they do and have done substantial business in this District.

25.     Venue is proper in this District under at least 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

**A.     John Baldessari and Beyer Projects Worked Together to Create Multiple Works**

**Example of Collaboration Between Beyer Projects and John Baldessari:**
***Camel (Albino) Contemplating Needle (Large)***

26.     As an example of how John Baldessari and Beyer Projects collaborated, the creation of *Camel (Albino) Contemplating Needle (Large)* is described.

27.     Around 2011, John Baldessari told Steven Beyer at Beyer Projects that he wanted to create a sculpture of a camel contemplating the eye of a needle. This was an oral conversation, with only a stock online photo of a two-humped dromedary as an example. Beyer Projects took this thought and returned with sketches. Beyer Projects turned this into a computer rendering, elongating legs, reducing the figure to one hump, smoothing out the texture, creating an image of

7

the needle and a mock-up of how the figures would relate to each other. John would offer his opinions and insights verbally and Beyer Projects would incorporate them into changes. Over the next year, Beyer Projects would modify the original computer rendering, build small-scale models, and eventually begin production of the final large-scale sculpture. Beyer Projects' involvement in production ranged from overseeing quality of manufacturing to small details such as designing and coloring a glass eye to engineering the final installation.

28.     The result of this process was the following, of which Beyer Projects fabricated six identical sculptures:



29.     The contract governing the above sculpture is attached as Exhibit 1-A.

30.     The contract governing the creation of this sculpture was typical of the Baldessari-Beyer contracts. That is, Beyer Projects would produce multiple sculptures, providing:

> o   one "artist's proof" would be fully owned by John (the "John-Owned" art);

8

o   one "artist's proof" would be fully owned by Beyer Projects (the "Beyer-Owned" art);

o   the rest—a combination of an additional "artist's proof" and three "editions"—would be co-owned (the "Co-Owned" art); and

o   the parties agreed to split the profits from sale of the co-owned artwork after Beyer Projects recouped its costs.

31.   For example, for the above sculpture, the relevant contract provides as follows for the four Co-Owned sculptures: "BEYER Projects and Baldessari will split the profits from the sale [of the four] 50/50 after production costs have been paid." (Ex. 1-A.)

**The Parties' Contracts**

32.   The first collaboration between John Baldessari and Beyer Projects was the sculpture *Beethoven's Trumpet (with Ear)*. (*See* Ex. 1-B.) All of these sculptures were sold, and the monies were distributed as per the contract, just as is provided in the other Baldessari-Beyer contracts. That is, working with John, and just as John had agreed, Beyer Projects took 50% of the profits after having been paid its production costs. Because all have already been sold, this sculpture is not part of the parties' dispute.

33.   The parties entered into 10 other contracts, each representing a particular sculptural collaboration. Here is a list of those works and who, pursuant to the applicable contract, owned each sculpture upon creation:

|   | Work | John-Owned | Beyer-Owned | Co-Owned | Cite |
|---|---|---|---|---|---|
| 1 | *Camel (Albino) Contemplating Needle (Large)* | 1 | 1 | 4 | Ex. 1-A |
| 2 | *Ear Sofa and Nose Sconces* | 1 | 1 | 6 | Ex. 1-C |
| 8 | *Brain/Cloud (Two Views): with Palm Tree and Seascape* | 0 | 0 | 1 | Ex. 1-D |
| 3 | *Water on the Brain* | 1 | 1 | 6 | Ex. 1-E |
| 4 | *Fake Carrot* | 1 | 1 | 7 | Ex. 1-F |
| 5 | *Lead Cloud* | 3 | 3 | 25 | Ex. 1-G |

| 6 | "standing emperor penguin as self-portrait" (aka *Penguin*) | 1 | 1 | 3 | Ex. 1-H |
| 7 | *Giacometti with Barrel* | 1 | 1 | 3 | Ex. 1-I |
| 9 | *Pineapple* | 1 | 1 | 3 | Ex. 1-J |
| 10 | *Brain Fountain* | 0 | 0 | 1 | Ex. 1-K |

34.     Some of the Co-Owned sculptures have already been sold with the profits distributed as per the operative contracts. Those already-sold works are not part of the parties' dispute.

### *Contracts Nos. 1 through 8*

35.     The Trust has demanded full, uncompensated possession and ownership of the unsold Co-Owned sculptures of the 1ˢᵗ through the 8ᵗʰ contract listed *supra*.

### *Contract No. 9: Pineapple*

36.     The 9ᵗʰ contract listed *supra* was for *Pineapple*. John Baldessari and Beyer Projects finished Pineapple, but John died before his studio signed the authentication.

37.     The Trust denies that this is authentic John Baldessari artwork and has instructed John's studio to refuse posthumous certificates of authenticity.

38.     However, John Baldessari orally agreed with Beyer Projects that *Pineapple* was complete and authentic.

39.     Further, John Baldessari's studio confirmed this work is authentic by email. Upon completion, Steven Beyer emailed the head of John's studio regarding the certificates of authenticity for *Pineapple*: "Have you figured out how you want to sign the certificates?" (May 27, 2020 email from S. Beyer to B. Arrington.) The studio responded: "Will do. I'll keep you updated on the certificates. It might be similar to the last embosser stamp but created posthumously and approved by the Trustees." (May 27, 2020 email from B. Arrington to S. Beyer.)

40.     Further, John's studio requested and took possession of the John-Owned artist proof of *Pineapple*, reserving the right to sell it as authentic, again recognizing its completion and authenticity.

41.     It is clear that the Trust used the issuing of a posthumous certification as a negotiation tactic. It has done so to drive down the value of Beyer Projects' possessions, while reserving the right to ultimately issue posthumous certifications were it successful in taking possession of the Co-Owned sculptures of *Pineapple*.

### *Contract No. 10: Brain Fountain*

42.     The 10th contract listed *supra* was for *Brain Fountain*. John and Beyer Projects finished this work save one step. This is large scale public fountain project that, upon purchase, will be modified to fit the space of the purchaser. The research, design, and production plan for this work is complete—everything save an installation that did not require John's input.

43.     The Trust denies this is an authentic John Baldessari artwork. This is inconsistent with the actions of John Baldessari's studio, run by John Baldessari himself until his passing. The Trust's current gallery of choice, Sprüth Magers, offered this artwork for sale to the Schinkel Pavilion in Berlin in 2010. While the sale did not go through, there was never any suggestion that it was selling an unfinished or un-authenticated work.

44.     The Trust's denial of the authenticity of *Brain Fountain* is also inconsistent with their actions. The Trust has demanded "all paper and electronic materials" related to Brain Fountain, even though Beyer Projects paid 100% of the costs associated with generating those materials. Moreover, if the sculpture is deemed not to be authentic by the Estate, then there should be no reason for them to have any material that Beyer Projects created and paid for.

45.     It appears that the Trust is demanding this material so that it can ultimately sell *Brain Fountain* itself and deny Beyer Projects its contractual share of the profits.

**B.      The Trust Caused the Cancelling of the Gagosian Gallery Exhibition**

46.     Beyer Projects began speaking to the Gagosian Galleries in the latter half of 2022, to exhibit and sell the Beyer-Owned and Co-Owned artwork.

47.     Beyer Projects attempted to involve the Trust. Steven believed himself to be on good terms with defendant Antonio Baldesari—indeed, their last discussions, at John's funeral, were pleasant. Steven reached out to Antonio by phone, text, and email to involve him in the Gagosian project. Antonio refused to respond to Steven's messages. Likewise, the Gagosian Gallery repeatedly reached out to the Trust's gallery of choice, Sprüth Magers, to offer ways for the two galleries to collaborate on the exhibition. As with Antonio, Sprüth Magers refused to respond.

48.     Beyer Projects went forward with the Gagosian project, executing an agreement with the gallery in November of 2022. Thereafter, Beyer Projects worked with Gagosian to get the exhibition in order, including undertaking great expense in its preparation.

49.     In September of 2022, counsel for the Trust contacted Beyer Projects, purporting to be interested in simply getting an inventory of the John Baldessari works in its possession. This was deceptive. Counsel did not reveal that the Trust intended to make adverse claims to the artwork in the possession of Beyer Projects. Rather, counsel for the Trust had called Beyer Projects to do its diligence for its adverse claim, pretending the call was otherwise.

50.     In January of 2022, the Trust announced that it was repudiating all the existing contracts by both claiming all Co-Owned art as its sole property and insisted that the Gagosian project be cancelled. The Trust wrote to Beyer Projects in relevant part as follows:

*Also, to be clear, all of these sculpture editions of John Baldessari works of art currently in the possession of Beyer Projects are works of art solely owned by the Trust, as the successor in interest to John Baldessari. As the consignor to Beyer Projects of each of the above sculptures, the Trust has sole authority to determine the disposition of each of these works of art and whether, and if so when, any such works of art may be exhibited…. Therefore, the Trust's decision not to permit the works to be exhibited in the proposed exhibition at Gagosian Gallery must be adhered to by Beyer Projects.*

(Jan. 10, 2023 letter from D. Nicyper to Beyer Projects (emphasis added).)

51.     The Trust sent additional letters, demanding they demanded sole possession and asserting sole ownership of the Co-Owned artwork and repeating their demand that the Gagosian exhibition be cancelled.

52.     Ultimately, despite agreeing with Beyer Projects' legal position, the Gagosian Gallery cancelled the exhibition because of the Trust's adversarial position and behavior.

**C.      The Trust Caused Sprüth Magers to Refuse to Return Co-Owned Artwork**

53.     Beyer Projects is not a consignee. But it has repeatedly acted as a consignor, signing consignment agreements with third parties to sell artwork. One such agreement was with the Sprüth Magers gallery.

54.     Pursuant to a Consignment Form signed by Sprüth Magers and Beyer Projects, dated January 3, 2021, the former became the consignee of a Beyer Projects' edition of *Ear Sofa and Nose Sconces*. The term of that agreement expired on May 31, 2022.

55.     May 2022 came and went and Sprüth Magers had not communicated with Beyer Projects. Beyer Projects made numerous attempts to communicate with the gallery, and it would not return any messages.

56.     On February 13, 2023, counsel for Beyer Projects contacted Sprüth Magers demanding the return of its artwork. Still, Sprüth Magers would not respond. Instead, the Trust responded, making it clear that they had instructed Sprüth Magers to keep the consigned edition

of *Ear Sofa and Nose Sconces*—thus deliberately inducing them to breach the January 3, 2021

Consignment Form. Specifically, the Trust responded:

> We are aware that you sent a letter to Baldessari's current gallery of record, Sprueth
> Magers, regarding a Baldessari edition of the work of art titled *Ear Sofa and Nose
> Sconces*. As the owner of that work of art, the Trust hereby assumes the position of
> consignor and will handle working with Sprueth Magers regarding this work of art
> from this date forward.

(Feb. 22, 2023 letter from D. Nicyper to A. Chachkes.)

57.     The Trust had no contractual right to "assume[] the position of consignor," which

in reality meant they were enlisting Sprüth Magers in its scheme to deny Beyer Projects its

benefit of the bargain under the *Ear Sofa and Nose Sconces* contract, Exhibit 1-C.

## COUNT I
## BREACHES OF CONTRACT

58.     Beyer Projects repeats, realleges, and incorporates by reference as if fully set forth

herein each and every allegation in all preceding paragraphs.

59.     On information and belief, Trust has inherited all of the rights and obligations of

John Baldessari under the contracts attached as Exhibit 1, and John Baldessari's agreement to

authenticate the artwork created thereunder (whether implied under the relevant contracts or

expressly stated by John).

60.     Pursuant to these agreements, the Co-Owned artwork is owned both by John

Baldessari (now the Trust) and Beyer Projects. Pursuant to these agreements, John Baldessari

had, and now the Trust has, obligations to work with Beyer Projects to sell the subject Co-

Owned artwork, to pay Beyer Projects half of any profits from those sales after reimbursement of

production costs, and to authenticate *Pineapple* and *Brain Cloud*.

61.     Beyer Projects has performed its relevant obligations thereunder, namely working with John Baldessari to create the subject artwork (whether John-Owned, Beyer-Owned, or Co-Owned) at its own expense, and working to arrange the sale of the Co-Owned artwork.

62.     The Trust has breached these agreements, at least insofar as it has claimed full ownership and possession of the Co-Owned artwork, has prevented the sale of that artwork, has failed to direct John Baldessari's studio to authenticate *Pineapple* and *Brain Cloud*, and has otherwise refused to discharge its obligations under those contracts.

63.     As a result of these breaches, Beyer Projects has been damaged.

**COUNT II**
**BREACHES IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

64.     Beyer Projects repeats, realleges, and incorporates by reference as if fully set forth herein each and every allegation in all preceding paragraphs.

65.     Implicit in each of the contracts attached as Exhibit 1 is an implied covenant of good faith and fair dealing.

66.     The Trust breached its implied covenants of good faith and fair dealing, insofar as it has undertaken actions that had the effect of destroying or injuring the rights of Beyer Projects to receive the fruit of the contracts.

67.     As a result of these breaches, Beyer Projects has been damaged.

**COUNT III**
**TORTIOUS INTERFERENCE WITH CONTRACT**

68.     Beyer Projects repeats, realleges, and incorporates by reference as if fully set forth herein each and every allegation in all preceding paragraphs.

69.     A valid contract existed between Beyer Projects and the Gagosian gallery.

70.     A valid contract existed between Beyer Projects and the Sprüth Magers gallery.

71.     The Trust was aware of those contracts.

72.     The Trust intentionally procured the breach of each of the Gagosian and Sprüth

Magers contract without justification. These contracts would not have been breached but for the

conduct of the Trust.

73.     As a result of these breaches, Beyer Projects has been damaged.

**COUNT IV**
**DECLARATORY JUDGMENT**

74.     Beyer Projects repeats, realleges, and incorporates by reference as if fully set forth

herein each and every allegation in all preceding paragraphs.

75.     There is a substantial controversy between Beyer Projects and the Trust, of

sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Beyer

Projects is immediately in danger of sustaining direct injury as a result of the Trust's claim to full

ownership and possession of the Co-Owned sculptures. For example, Beyer Projects is currently

unable to sell the Co-Owned sculptures.

76.     Beyer Projects is entitled to a declaration that it is 50-50 owner of the Co-Owned

sculptures.

77.     Beyer Projects is entitled to a declaration that it is entitled to 50% of the profits

from the sale of the Co-Owned sculptures after production costs have been paid to Beyer

Projects.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

A.     That Beyer Projects be awarded damages for the breach of each of the contracts

set forth in Count 1.

B.      That the Court order specific performance of the Trust's obligation to authenticate or cause to be authenticated *Pineapple* and *Brain Fountain* as set forth in Count I.

C.      That Beyer Projects be awarded damages for defendants' breach of the implied covenant of good faith and fair dealing set forth in Count II.

D.      That Beyer Projects be awarded damages for the Trust's tortious interference with contract as set forth in Count III.

E.      That Beyer Projects be awarded punitive damages for the Trust's tortious interference with contract as set forth in Count III.

F.      That the Court declare that Beyer Projects is 50-50 owner of the Co-Owned sculptures as set forth in Count IV.

G.      That the Court declare that Beyer Projects it is entitled to 50% of the profits from the sale of the Co-Owned sculptures after production costs have been paid to Beyer Projects as set forth in Count IV.

H.      That Beyer Projects be awarded pre-judgment and post-judgment interest to the full extent allowed under the law, as well as its costs and disbursements.

I.      That the Court award such other relief as it may deem appropriate and just under the circumstances.

Dated:  May 8, 2023

/s/ Alex V. Chachkes

Alex V. Chachkes
New York Reg. No. 3035078
SETTY CHACHKES PLLC
228 Park Avenue South, Suite 54517
New York, NY 10003
917-428-1358

*Attorneys for Plaintiff*